It's 141669 in race lot group management. Mr. Lindenbaum. Good morning. May it please the court, Jeffrey Lindenbaum on behalf of the appellant, Swatch Group Management Services. For several years, Swatch has owned the trademark that's at issue in this appeal. Approximately five years ago, it registered that mark for retail store services and jewelry repair services. It then sought to expand its rights in the mark and applied for registration of the mark in connection with certain products, including jewelry and other timekeeping products. Trademark office refused registration of the mark, finding that it was merely descriptive of those goods. Why are we looking here at the general public for a determination, as opposed to the group of people that would actually buy this watch, which is a really tiny group, right? Right. Well, the cases teach that you look to the average consumer of the good as identified in the application. So, in this case, the application isn't limited to jewelry, namely watches that include tourbillons, but it includes, it just says jewelry without any limitation. So the average consumer of those products are, as the case is, there's a case cited, and are just average consumers who purchase jewelry. In this appeal, Swatch is limiting its challenge to just the portion of the TTAB's decision that refused registration, finding that the design element was merely descriptive. The parties agree on the general test for determining whether a design is merely descriptive. Help me out with, and here I've lost the train of what's going on with the disclaimers and so forth, and the effect of the word. Where are we exactly in terms of the procedural posture of this case, vis-a-vis the respective interests that you're attempting to protect for the word, the drawing, and the combination of the word and the drawing? So Swatch has, has not challenged the board's decision that the word is merely descriptive of the goods. Right. But Swatch maintains that the combination of the word and the design is entitled to registration. Now where does that fit with the total disclaimer problem? Well marks all the time are registered where portions of the mark are disclaimed, where the words, for example, are valid. And you're disclaiming the word in this context, so that you're saying that the word and the drawing together are protected, but not the word alone. There's that basic position of... That's correct. All right. Yes. So the... The disclaimer doesn't go beyond that, is what I'm asking, really. That's the, that's the effect, the limit of the, the effect of the disclaimer. That's right. That's right. So Swatch is not claiming any rights in the word, but has been claiming rights to the mark in its entirety, and argues in this appeal that it is entitled to do so because of the distinctive element in the design. Right. That, that's, the element in the design is what distinguishes its mark from others. Okay. I got you. So if a design consists merely of an illustration of one's product, the parties agree that it is descriptive and not entitled to registration. But when an illustration includes arbitrary or fanciful elements, or elements that are unnatural, exaggerated, or otherwise unusual in appearance, the illustration can cross the fine line between descriptive and suggestive and be entitled to registration. So Swatch's design, while certainly modeled after a Torbjörn component, has some arbitrary and fanciful elements. So the question before this Court is whether the Board erred in finding that these stylistic elements were not distinctive enough to permit registration. And the Board on page 15 frames the question, frames the issue and says, none of the stylistic elements in applicant's design are sufficiently distinctive to be considered fanciful, arbitrary, or suggestive. But the cases cited do not support that conclusion. In fact, if you look at the cases on both sides, cases where designs have been permitted to register and those that have been refused, it's clear that Swatch's design does contain sufficient stylistic elements to render it more than merely descriptive. And most compelling on this point is the Board's decision in the LRC products case, which is a decision that is designated as precedential. And that's the case where the Board set the standard that for what design elements must be sufficiently distinctive to overcome a descriptiveness refusal. That's the case involving the design of the two hands or gloves, and the goods in that case were actual gloves. And the Board there said that it was, that design was sufficiently arbitrary and fanciful because it had abnormally straight lines, relative unnatural positioning of the fingers and the thumbs, and awkward positioning of the hands. Can I just ask you, is what we're talking about here this escape wheel or the alleged escape wheel in the sun? That's the strongest point that Swatch has in terms of why it's marked as distinctive. Yes, if you look at the design compared to all the different Torbjörn examples in the record, there's other differences that are clear. But we maintain that the core argument that we're making today is that that element in the upper right corner of the design, which looks like the sun or looking through a spotting scope. And if you consider that in the context, that designation, that element in the context of the LRC products case, it's clear that the Board set a very low standard for what has to be shown to show that the mark has distinctive and fanciful elements. Now, if you, this is a question that struck me in looking at the various drawings and photographs here, but you can maybe straighten me out. On page 21 of the red brief, there is your drawing and one of the photographs, I guess it is, of Torbjörn. Now that contains many of the elements of your drawing. Do you have that in front of you? I do, yes, thank you. Including the escape wheel, although the escape wheel appears to be there on the bottom of the device. Now, if you were to turn this device over, it looks like, for the best I can tell, you would have the escape wheel in a much more prominent position on the top of the device. Does that, do you view that differently? Well, I make two points on that. First is this drawing is really where the Board, I think, went off the tracks, because this drawing is not an actual Torbjörn. This is sourced from the examining attorney who found this on one internet website, and then the Board elevated this to the status of this being the standard configuration. But it purported to be a depiction, an accurate depiction of Torbjörn as opposed to a fanciful version of Torbjörn again. Well, it hasn't been, we don't know what this website was, and it hasn't been authenticated. We don't know really beyond that it was found on one website, and one person apparently believed that this was a rendition of that. But we're really not, I don't understand us to have before us today the question of whether this is an inadmissible reference, right? Well, it's the, our argument is one that you should consider the fact that it's from one website, it's authenticated, and the much more probative evidence is the comparison of the Torbjörn, of the design to the actual Torbjörn products in the case. That's the point, that this shouldn't be held out as the standard simply because it's said on the website the anatomy of a Torbjörn. That has not been established. But if we assume it's admissible, because I don't think you specifically argued that, it still can be a piece of substantial evidence, can't it? Well, I would not say it's substantial evidence. I would say that it's the actual pictures of the real Torbjörn devices should be given much greater weight than this, and this is just... But if you're asking us to weigh one piece versus the other, then you're asking us to apply a different standard than we do to these cases. I mean, if we look at these all and decide that this is, this depiction that you don't like is substantial evidence, doesn't that end the inquiry? Well, it's whether or not that would meet the substantial evidence test, given that it's from one website, it hasn't been verified. But turning even to the ultimate question, is even if we accept this as the standard of Torbjörns and forget about all the other devices, it's clear that Swatch's design still should be entitled to registration, because it's not merely just a replacement of the wheel from one spot to another. By doing so, Swatch has greatly exaggerated the prominence of this wheel in a way that it's not found in any type of actual product, or even any drawing, including this one, in the record. So you're not talking about the content, you're talking about the prominence. In this case, it's what's the consumer's impression of looking at the design. So the prominence is really a key focus of determining whether or not a mark is descriptive or not. So a consumer who sees this and sees this escape wheel, which is something that it would never have recognized to be in this type of configuration, would recognize this as an identification of source and not merely a reproduction of Swatch's product or any other product. Well, as I think the board said, no line drawing is going to be a perfect reproduction, even if the line drawer is skilled and is doing the best that they can to reproduce the photograph, what the photograph would indicate. But isn't the issue whether this is sufficiently far from what a photograph would be that it would be fanciful, arbitrary, or suggestive? Well, that's our position, that it is. That's the question. In other words, if this is less than fanciful and it's pretty close to what we would regard as a perfect copy, isn't it still within the realm of descriptive and hasn't crossed over into the suggestive? Absolutely. If this is deemed to be a mere reproduction of what a tourbillon looks like or almost a mere reproduction. Or almost a reproduction, something that's less than fanciful. Then yes. All right. But what's the guidepost for where you cross that line? Well, that's always a problem in trademark law because it's a smooth curve. But we have the answer here because we have the LRC products case. An LRC, which is the precedential decision set by the board. It's been cited by several subsequent board decisions. And in fact, it's the case that the board includes. But isn't it ultimately a question for the board? Whether it's descriptive or not is a question for the board. And they're the ones that can decide in the first instance whether this exaggerated escape wheel and the fact that it doesn't contain all the elements and it's flat is descriptive or not. And it almost sounds like you're asking us to look at it anew. And it seems to me that once you look at this and realize that this does have a lot of parts that look almost identical to the drawing you don't like and that the main difference is the escape wheel is perhaps in a different place than exaggerated. That's a weighing, isn't it? Like I said, it's a line. So if it's, you know, I can't even tell percentage wise. But say this is 75% accurate of the depiction of an actual device and 25%, you know, fanciful. And the board says that's not enough to get it out of descriptiveness. Then how do we just discern that conclusion? I think you have to make your decision based on the guideposts that have been set. That it is, we all agree, the line between suggestive and descriptive is often fuzzy. And with designs, it's even more particularly so because words at least have meaning. So when you're trying to decide or determine whether a word is descriptive, at least you have a dictionary definition. Designs, you need to go by the guideposts. And the guideposts were set by the board in LRC products. But apparently the board thinks that LRC doesn't dictate the result that you want in this case. And the question, Judge Hughes's question, which I share is that isn't the board entitled within a realm of permissible leeway to make that determination? It does. And to the extent it falls within that leeway. And it's our position that the board fell outside that leeway when you compare the distinctiveness of the design and the prominence of that escape wheel in the upper right corner. And you look at that in the context of the precedential decisions that the board has set in LRC products. And so it's our position that it goes beyond. That's exactly why this court should review it. It went beyond those guideposts. Why don't we turn to the government and you enter your rebuttal. Thank you. Ms. Walker. May it please the Court. Swatch has focused its arguments both today and in its brief on the design element of its mark. But this is not just a design mark. This is a design and word mark. This court said in Duoprof that it is improper to look at just the design. And that goes back to the question that I had at the outset. And maybe I should understand better the relationship between the word and the mark. But I had thought that once there was a disclaimer of the word, then we do focus on the design. And we ask ourselves, is perhaps other than informing by implication the observer that this design is intended to convey the idea of a tourbillon, which is if you know what a tourbillon is, presumably that's going to be obvious. But what beyond that is the significance of the fact that there's a combination of the word and the design where the word is disclaimed? So the significance is that the mark as a whole is the mark it's applied for. So the commercial impression that's measured is the commercial impression of the mark as a whole. So in Duoprof, the court found in that case that the word element of the mark, SNAP, was descriptive. And here we have the exact same issue. Swatch has admitted that tourbillon, the word, is descriptive because they just disclaimed that from their mark. And so the only question is whether the mark as a whole, in viewing the word, because the In viewing the word, will consumers understand what the mark means? And there is simply no question here, and can be no question under Duoprof, that consumers are going to know what the mark is because the word tells them what the design is. To the extent that there's a question about the design, substantial evidence also separately supports the design as descriptive here. But we have to include the word mark. Are you saying then that in the LRC case that your opposing counsel is relying on, that if that mark had not been just the more or less abstract drawing of the gloves, but had been a mark which had the drawing of the gloves, exactly the same drawing, and had the word gloves above it, it would have come out differently? That's right, Your Honor. That would have been a different case. Well, it would have come out differently because even though a person looking at the drawing of gloves would know that that's a drawing of gloves, that the word makes a different impression? Well, I think that what the board found in LRC actually is that in immediately viewing the mark in that case, consumers wouldn't know that they were gloves. That the hand or gloves were in a unnatural position, right? And that the lines were unnaturally straight. And so you have a question, is this a pair of gloves or is this a hand? And then additionally, you also have the color portion of that, right? You have one of the hand or gloves in yellow and the other in white, right? So it's the sort of totality of that drawing that the board, which it's in what it said was a very close case, found to be sufficiently suggestive in that case. Well, I'm having trouble with this distinction. I don't want to hold you too long on this, but I need the help. If you have the NBC peacock, which obviously is a stylized peacock, but nonetheless is pretty clear to anybody that looks at it, it's a peacock. That's what they're making it, that's a colored version of a peacock. Are you saying that that would be a registrable mark if it didn't have the word peacock above it, but if you put the word peacock above it, it suddenly becomes non-registrable? Well, it depends on what the goods are, right? I mean, you have to look at it in terms of what the goods are that are covered in the application. Okay, well that's a fair point, so they're not selling peacocks. Right, and it's not, right, and it's not, right, so what we're talking about- But suppose they were selling peacocks, suppose they were selling peacocks, among other things, and you had the word in some kind of script, peacocks, and then you had this very stylized, but nonetheless recognizable peacock below the word. Are you saying that the presence of the word makes a difference even though everybody would Well, I think it's going to depend on the record in that case, and it's sort of hard to talk in hypotheticals about these types of issues because it so much depends on what is in the record. So, I don't know that I can answer that exactly. I mean, I think, again, I think the point that you made earlier about it's hard to draw these lines, but here there's no question, and there's no question that substantial evidence supports the board's finding both that the design standing alone and the mark as a whole is descriptive, and I do think that, going back to Duoprof again, I think that that case is instructive because the design element in that mark was an exclamation point. It was an exclamation point that was broken, and an issue in that case were these snapping syringes, and so what this court found was, first, even if you assume that the snap, snapping exclamation point is suggestive, sort of just over the edge of suggestive, the mark as a whole, snap and the snapping exclamation part, is clearly descriptive. And then, secondly, the court went on to consider the snapping exclamation point and found that that design element was descriptive in its own right, right? So, the snapping exclamation point is descriptive. The snapping exclamation point doesn't tell us nearly what Swatch's design tells us here about the goods. It's a nearly literal depiction of a tourbillon, and together with the word tourbillon, there's simply no way that consumers will find that there's any impression from the mark other than a tourbillon. I did want to make one point. Counsel brought up in the argument, and also in the reply brief, about this evidence that the board relied on that we also put on page 21 of our brief. That's found at 845 in the record. That same design is also found on page 52 of the record, so it's incorrect to say that it's only in one website, because it's in at least two websites in this record. But the board was also very clear that it wasn't relying just on that design. The board went on in its opinion on pages 16 through 19 to say that it looked at many of the designs in the record and found that Swatch's design was similar to many of the tourbillon designs. And one additional point, Swatch is making some complaints about sort of the authentication, which is an improper objection. There's no authentication requirement in ex parte cases, and this court has allowed internet evidence. But if Swatch is complaining about that, then they have a larger problem, because much of the evidence that they rely on, which is found at pages 77 through 79 of the record, are just images with no information whatsoever about the images. And those are many of the images that Swatch points to in its brief. They don't give us the website. They don't tell us where they came from. So we don't know anything about them. And so for them to complain here about one website where you can find the information just isn't proper. Additionally, the inquiry is about what consumers would perceive. And both of these designs were found on websites that dealt with watches. So it's very reasonable to assume that a consumer would go to a website about a watch and would perceive this drawing. If the court has no further questions, I will yield the rest of my time. In this kind of, I do have just a, again, a kind of policy-based question. I guess that the thing we're trying to prevent, the evil we're trying to prevent by not allowing the registration of this particular, the drawing in particular, is we want to have everyone free to have a depiction of a tourbillon and not to have Swatch looking over their shoulder and saying, that's too close to our drawing. Is that basically the sole real reason that we are keeping these kinds of realistic depictions of products out of the registration? That's right. The policy underlying design is the same as the policy underlying word. I mean, some places, marks are there for confusion of source and confusion of various source, but that's not an issue here, I suppose. It's entirely trying to free the street for people who want to have just either photographs or something very close to a photograph in a line-drawing form of their product. Is that the gist of it? That's right. I mean, the policy underlying descriptive marks generally is about leaving the public free to use descriptive terms or images to describe their product. There's a provision in the Lanham Act that allows for a company to come back in after a sufficient period of use and claim acquired distinctiveness. So it's not that companies are prohibited from ever using descriptive terms. They just must show that that descriptive term has come to be a source identifier. So today, what we're questioning is whether this is, out of the box, a source identifier. And it's our position that substantial evidence more than supports the board's finding here that the composite mark and the design standing alone, but certainly the composite mark, is merely descriptive of the good that issue. Thank you. To address, Your Honor, Judge Bryson's question about the play on the words and the design, I think a good hypothetical is if you have the jolly green giant, a very distinctive character, and he's holding a peapod, and then underneath it says canned peas. In that case, even though a consumer who sees that right away will recognize that their product is canned peas, because the test is whether it's merely descriptive, and in that case there is a distinguishing designation in the mark, that mark would be entitled to registration. The company would likely have to disclaim the word canned peas, but consumers who see notwithstanding the words canned peas would recognize that mark as an identification of source. And so that's Swatch's position here. And even if not an identification of source, it would still be fashionable. Nobody has peas that big. Right. So in Swatch's case here, that's our argument, is that the word does not have to, the design does not have to subsume the impact of the word. It's whether when you see the design and the word combined, do you recognize it because of the distinctive element of the design that in fact is indicating source. And to go to your other question about, well, isn't the policy here to free the street? And so in that context... That really is the policy in descriptive marks, I guess. Ultimately. But the way that's handled... Right. But the way that that's handled is in the next phase when Swatch goes to enforce its mark, the court will likely find, well, what are you entitled to? What's the protectable element of this mark? You're not entitled to exclude all use of the word tourbillon. A lot of perhaps your design elements are not enforceable, but someone has adopted this distinctive part of your mark, the sunburst, and placing it on top and making that prominent. That steps over the line. So while you're not entitled to preclude tourbillons or even almost every image of a tourbillon, you are entitled. You've met that minimum standard to overcome that. It's not merely descriptive to entitle your mark to registration and get at least enforcement for that aspect of the mark. Quickly, their case, the Duopro's case was mentioned. I think the distinguishing feature there was that the design element showed a snapping. So it in itself gave indication as to what the feature of the product was. Here, the decision to make the sun appear as it does and make it a prominent feature has no functional capacity and doesn't give further indication as to what the goods are. That's purely a stylistic element that Swatch put in that distinguishes its mark from someone else. Had they intended to really merely just reproduce what a tourbillon looks like, they never would have included that design the way it is. There's no example, even if you include the drawings that we really don't like and the actual products, there's no example in this record that shows the tourbillon product using that designation and its prominence. To go back, just to clarify this for my benefit, to go back to the drawing on page 21, if you like, because it appears to be on the bottom of the device. Yeah, but I think the response to that is that there's no examples in this record at all that that tourbillon has ever flipped over on its back and would ever appear to a consumer. Every single example we have shows that wheel hidden and partially obscured under the other components. There's not any example showing that it's ever done as Swatch did here. Time is up. Okay, thank you very much. And we shall call council. That concludes our proceedings for this morning. All rise. The Honorable Court is adjourned from day to day.